**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

IN RE:   THOMAS M. NORMAN,                              Case No. 06-70859-A
                                                        Chapter 13
                    Debtor.

_____

**MEMORANDUM OPINION AND ORDER SUSTAINING THE TRUSTEE'S
OBJECTION TO CONFIRMATION**
_____

This matter is before the Court on the Chapter 13 trustee's Objection to Confirmation of Chapter 13 Plan, which objection states that the trustee is unable to determine the plan's feasibility due to the debtor's failure to turn over copies of his initial consultation letter and engagement letter[1] (the "letters") between he and his counsel. The trustee and the debtor agree that these documents are required to be completed by the debtor and his counsel pursuant to 11 U.S.C. §§ 526, 527 and 528, and that the debtor must file a statement of compensation with the Court and the United States Trustee ("UST") pursuant to 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016, respectively. The parties do not agree, however, on whether the debtor must turn over copies of the letters to the trustee for his review, which is the issue before this Court.

This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FINDINGS OF FACT

The facts in this case are not in dispute. On June 26, 2006, the debtor filed a petition for relief under Chapter 13 of Title 11 of the United States Code ("Bankruptcy Code" or "Code"). The debtor filed a Disclosure of Compensation of Attorney for Debtor ("Disclosure Statement"), which stated that the debtor agreed to pay his counsel $3,000.00 for legal services related to the bankruptcy, of which $1,410.00 was paid pre-petition. The Disclosure Statement stated that the listed compensation covered the following legal services: 1) analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy; 2) preparation and filing of any petition, schedules, statement of affairs and plan which may be required; 3) representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearing thereof; and 4) exemption planning. The Disclosure Statement then listed the services that were not included in the $3,000 fee: 1) dischargeability actions, judicial lien avoidances, relief from stay actions, or any other adversary proceeding (objections and litigation to be billed at $250.00 per hour (attorney) and $75.00 per hour (staff) as approved by the Court); 2) conversion of the case (billed at $700); 3) the addition of creditors after the petition was filed (billed at $200); 4) negotiation of Reaffirmation Agreements (billed at $150); and 5) garnishment recoveries (billed at 30% of any recovery).[2]

---

[1] This engagement letter was also referred to by the debtor as a retainer agreement but will be referred to throughout this Opinion as an engagement letter for the sake of consistency.

[2] The trustee reserved his right to challenge the propriety of these additional charges in separate proceedings, but refrained from doing so here as they are not in issue in this proceeding.

On June 27, 2006, the Chapter 13 trustee was appointed in this case and continues to serve in that capacity. On July 7, 2006, the debtor filed his plan of reorganization ("Plan"), which has not been confirmed by this Court due to the instant objection of the trustee. The Plan calls for debtor's counsel to receive the balance of his fee, $1,590, before or concurrently with the payments to the other creditors in the debtor's case. The Statement of Financial Affairs was also filed on July 7, 2006, stating that in June 2005,[3] the debtor paid to his attorney the following amounts: 1) $274 filing fee; 2) $100 advanced costs; 3) $40 credit report; and 4) $1,410 of the $3,000 attorney's fee.

On July 24, 2006, the § 341 Meeting of Creditors was held during which the trustee requested that the debtor turn over the consultation and engagement letters. The debtor refused, which lead to the filing of this objection on August 15, 2006. The debtor filed a response to the objection on August 17, 2006, claiming that the documents were protected by the attorney-client privilege and, therefore, did not have to be turned over to the trustee.

On August 29, 2006, a hearing was held regarding the objection and response, at which time the Court requested that the parties prepare briefs and reply briefs setting forth their arguments. The representative from the United States Trustee's office was present at that hearing and asked to brief the issue as well, which the Court allowed.

---

[3] The Statement of Financial Affairs lists the date of payment as "June 2005" which caused a moment of pause for the Court as the case was filed in June 2006; however for the purposes of this motion even if this date is incorrect it is of no consequence as long as the payment was made on June 27, 2005 or after.

3

## ARGUMENTS

As a preliminary matter, the debtor has conceded that the letters are not protected by the attorney/client privilege; therefore the only issue for the Court to consider is whether the trustee has the authority to request and receive the letters for his review.

The trustee argues that because §§ 526, 527 and 528 of the Code require that the debtor and his counsel complete the letters and that the terms therein be disclosed pursuant to § 329 of the Code and Fed. R. Bankr. P. 2016(b), as one of the trustee's ministerial duties is to ensure compliance with these requirements.  Further, the trustee argues that while the Code is not specific about who should be monitoring compliance with the above-referenced statutes, it only makes logical sense that it would be the Chapter 13 trustee, especially given that he has been tasked by the Court to ensure compliance with other statutes that also fail to specify who will do the monitoring; such as statutes requiring pay advices, proof of insurance and verification of lease payments and adequate protection payments.  *See* Standing Order No. 06-2 (Bankr. E.D. Va.), Interim Procedures Governing Practice and Procedure Under The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 1007-1 & 4002-1 (Bankr. E.D. Va., Oct. 2006). Additionally, the trustee states that one of his duties is to determine the plan's feasibility, which requires that the plan pays out according to the engagement letter; this requirement necessitates that he actually reviews the letters.

---

There has been no indication to this Court that the payment was no made within one year prior to the bankruptcy filing.

4

The debtor argues that the trustee is not given any authority under the Code to demand the turnover of the letters.  Further, he argues that review of those documents does not fall within the meaning of investigating the debtor's financial affairs under § 704(a)(4) as that section references ordinary business, such as income and expenses, and could not possibly fall under any other duty of the trustee.  The debtor also argues that because a debtor could easily lie not only on a § 329 or Rule 2016 disclosure, but also in an engagement letter, by allowing a trustee the authority to review these documents the Court would be providing the trustee with limitless power to demand any documents, including check registers, bank statements, and credit card statements, that he or she wanted to obtain in an effort to verify and track payments to debtor's counsel, no matter the source.  The debtor argues that such a requirement would be overly burdensome on debtors and create a "super trustee," resulting in a terribly unbalanced bankruptcy system.  Finally, the debtor argues that the trustee's duty, according to the Code, is to monitor the debtor, not debtor's counsel, and that § 526 only allows for a state official, not the trustee, to take action against an attorney who has not complied with the requirements of §§ 526, 527 or 528 of the Code.

## CONCLUSIONS OF LAW

*Disclosure of Compensation*

Section 329 of the Bankruptcy Code requires that attorneys representing debtors file with the Court "a statement of compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the

5

petition." 11 U.S.C. § 529(a) (2006). Such disclosure is to be made even if the attorney never applies to the Court for compensation. *Id.* Compliance with this Code section is mandatory for all debtors regardless of the chapter under which they seek relief. *See* 11 U.S.C. § 103(a). The purpose of this section is two-fold; to ensure that desperate debtors are not taken advantage of by unscrupulous attorneys and to protect estate assets that should rightfully be used to pay creditors. *In re Ladevereauz*, No. 04-11376-RS, 2006 Bankr. Lexis 388, at *23-*24 (Bankr. D. Mass., Mar. 6, 2006), *In re McDonald Bros. Constr., Inc.*, 114 B.R. 989, 995 (Bankr. N.D. Ill. 1990) ("'Payments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny.'") (quoting the legislative history of § 329, H.R. Rep. No. 595, 95th Cong., 1st Sess. 329 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 39 (1978)); *In re Whitman*, 51 B.R. 502, 506 (Bankr. D. Mass. 1985), *In re Meyer*, 50 B.R. 3, 3-4 (Bankr. S.D. Fla. 1985)("The obvious purpose of these requirements is to enable the creditors to review the debtor's transactions with his attorneys and to seek, if necessary, the return of excessive payments made by a desperate debtor to an attorney on the eve of bankruptcy."), *In re Hill*, 5 B.R. 541, 542 (Bankr. C.D. Cal. 1980); *see Conrad Rubin & Lesser v. Pender*, 289 U.S. 472, 477-78 (1933)(discussing identical purposes of a predecessor to § 329, § 96(d) of the Bankruptcy Act).

Federal Rule of Bankruptcy Procedure 2016 also calls for the disclosure of attorney compensation by the debtor to the Court and to the United States Trustee ("UST") no later than 15 days after the order for relief is entered in the case. Fed. R.

6

Bankr. P. 2016(b). The disclosure must be supplemented "within 15 days after any payment or agreement not previously disclosed." *Id*.

Given the above Code and Rule requirements, without question any monies a debtor pays or agrees to pay to his or her attorney must be disclosed to the Court and the UST, but neither states whether the actual engagement letter must be turned over with or attached to the disclosure statements. The case is law is almost equally as silent on the issue; however, the Court was able to find a single case on this point. In *In re Hanson, In re Hetland*, 223 B.R. 775 (Bankr. D. Ore. 1998),[4] the court held that the debtors' § 329 and Rule 2016 compensation disclosure statements were inadequate because they did not attach the fee agreement between the debtors and their counsel, and, therefore, counsel was denied post-confirmation compensation. *Id*. at 781. It is important to note that the ruling by the *Hanson* court was handed down prior to new requirements placed on debtors and their counsel under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). These new requirements should be examined before this Court will determine whether to adopt the ruling in *Hanson*.

<u>New Documents Required Under BAPCPA</u>

In April 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act, which codified the above-referenced protections of the debtor and the estate in §§ 526, 527 & 528. 11 U.S.C. §§ 526, 527 and 528 (2006). These sections will be addressed in reverse order as the enforcement provision lies in § 526.

---

[4] There were actually two cases being decided, but the court consolidated the cases for purposes of the opinion only. *Hanson*, 223 B.R. at 776.

7

Section 528 requires that a debt relief agency,[5] such as debtor's counsel, must execute a written contract with an assisted person,[6] such as the debtor, "not later than 5 business days after the first date on which [it] provides any bankruptcy assistance[7] services to an assisted person." 11 U.S.C. § 528(a)(1). The services, fees and terms of payment must be "clearly and conspicuously" explained in the contract. *Id.* at § 528(a)(1)(A) and (a)(1)(B).

Section 527, in pertinent part, provides that a debt relief agency must provide several written disclosures to an assisted person "not later than 3 business days after the first date on which the debt relief agency offers bankruptcy assistance services." *Id.* at § 527(a)(2). One of the disclosures is notice that any information that the assisted person provides during their bankruptcy case may be audited and that failure to provide the information may result in various sanctions, including dismissal of the case. *Id.* at § 527(a)(2)(D).

Section 526, in relevant part, prohibits debt relief agencies from making misrepresentations to assisted persons regarding the services that will be provided to them as a debtor. *Id.* at § 526(a). Further, that section states that any contract between the debt relief agency and the assisted person that does not comply with the

---

[5] The Code defines a "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration," therefore, debtor's counsel would qualify as a debt relief agency. 11 U.S.C. § 101(12A) (2006).

[6] An "assisted person" is defined as any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $ 150,000. 11 U.S.C. § 101(3) (2006).

[7] The term "bankruptcy assistance" is defined as any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title. 11 U.S.C. § 101(4A) (2006).

8

provisions of §§ 526, 527, and 528 is void and may not be enforced by any person or any State or Federal court. *Id.* at § 526(c)(1).

Given these new requirements for debtors and their counsel, one might think that Congress would have had the foresight to amend § 329 and Rule 2016 to reflect whether the specific documents required by those sections must be turned over during the bankruptcy process; such an expection would be wrong. However, coupling the fact that the scope of the disclosure requirement is very broad, *Barron v. Countryman*, 432 F.3d 590, 595 (5th Cir. 2005), *In re McDonald Bros. Constr.*, 114 B.R. at 995., with the *Hanson* ruling and these new specific requirements that the letters in issue in this case be created as part of the bankruptcy case, this Court finds that the letters must be produced for review.

As additional support for this finding, while it is actually the debtor's attorney, not the debtor, who is providing the compensation disclosure statements to the Court and the UST, the Court presumes that attorneys are informing their clients of these disclosure requirements. Extrapolating the language and purpose of § 527, which states that any information the debtor provides during the bankruptcy process may be audited, it would follow that information regarding counsel's compensation can also be audited and verified. Consequently, the debtor cannot have any reasonable expectation of privacy as to the contents of those documents when the disclosure of their contents is required under the Code. *See Eddy*, 304 B.R. at 596 (holding that attorney compensation information is not protected by the attorney-client privilege as it must be

9

disclosed in bankruptcy and therefore the debtor had no reasonable expectation of the protection of that information).

The Court has determined that the letters must be produced, but to whom should they be provided?

*Determination of Compliance*

The Court acknowledges that the Code does not specifically state that the trustee is the party who is to review debtor's counsel's compensation; under § 329 and Rule 2016 that power is given to the Court and the UST.  11 U.S.C. § 329, Fed. R. Bankr. P. 2016.  The Court's codified duties extend further even than just review, as we are tasked, pursuant § 329(b), to ensure that debtor's counsel's compensation is reasonable. *Id*. at § 329(b), *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978)(made applicable to Chapter 13 cases by *Harmen v. Levin (In re Robertson)*, 772 F.2d 1150 (4th Cir. 1985)).  The Court necessarily has to review the letters to know the exact parameters of the representation in order to make a determination of reasonableness.  Unquestionably, the Court has a right to review the letters at issue here, but what about the trustee?

The Court is not responsible for the administration of the case; that is the job of the United States Trustee ("UST") and its appointees.   28 U.S.C. § 586(a)(3), *Brooks v. Nachman (In re McLean)*, 6 B.R. 327, 328 (Bankr. E.D. Va. 1980).  The UST appoints and supervises trustees to serve in cases filed under Chapters 7, 11, 12, 13 or 15 of Title 11 of the Bankruptcy Code.  28 U.S.C. § 586(a)(2) and (a)(3).  The private

trustee's duties for individual's Chapter 13 cases are spelled out in § 1302(b), which states:

> (b) The trustee shall--
> (1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title [11 USCS §§ 704(2), 704(3), 704(4), 704(5), 704(6),704(7), and 704(9)];
> (2) appear and be heard at any hearing that concerns--
> (A) the value of property subject to a lien;
> (B) confirmation of a plan; or
> (C) modification of the plan after confirmation;
> (3) dispose of, under regulations issued by the Director of the Administrative Office of the United States Courts, moneys received or to be received in a case under chapter XIII of the Bankruptcy Act;
> (4) advise, other than on legal matters, and assist the debtor in performance under the plan;
> (5) ensure that the debtor commences making timely payments under section 1326 of this title [11 USCS § 1326]; and
> (6) if with respect to the debtor there is a claim for a domestic support obligation, provide the applicable notice specified in subsection (d).

11 U.S.C. § 1302(b) (2006). The duties of § 704, incorporated by reference above, require the trustee to:

> (2) be accountable for all property received;
> (3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title [11 USCS § 521(2)(B)];
> (4) investigate the financial affairs of the debtor;
> (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
> (6) if advisable, oppose the discharge of the debtor;
> (7) unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest;
> ...
> (9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.

11 U.S.C. § 704(a)(2), (a)(3), (a)(4), (a)(5), (a)(6), (a)(7) and (a)(9). It is clear from this laundry list of responsibilities of the standing trustee in a Chapter 13 case that his

or her duty, as an appointee of the United States Trustee, is to monitor case administration. It follows that any disclosures that are required to be made to the UST should also be made to the Chapter 13 trustee, who handles the day to day administration of the case. As stated above, Rule 2016 requires that debtor's counsel provide a compensation disclosure statement to the UST and this Court finds that such a statement should also be made available to the trustee. In order for that disclosure to be a meaningful one the documents that give rise to it, namely the letters in dispute here, should also be produced. Otherwise, debtors and their counsel would provide the numbers they want the UST and the trustee to have with no way to verify the information. That sort of information exchange cannot be tolerated in the bankruptcy system; a system which the debtor has chosen to participate in because of his or her own financial problems.

Furthermore, the Code names the trustee the "representative of the estate," 11 U.S.C. § 323, and this Court has thought it appropriate to compel debtors to turn over other documents to the trustee, such as tax returns and pay advices to creditors, even though turn over to the trustee was not specified in the Code. Standing Order No. 06-2, Interim Procedures 1007-1(I)(2), 4002-1(A)(1)(a) & 4002-1(C). The Court has done so in recognition of the trustee's duty to investigate the finances of the debtor and ensure that the debtor is acting in good faith, for it is supposed to be only honest debtors who can avail themselves of the benefits of the bankruptcy system. *In re Eddy*, 304 B.R. 591, 596 (Bankr. D. Mass. 2004). *Black's Law Dictionary* defines finance as being "concerned with the value of the assets of the business system and the

acquisition and allocation of the financial resources of the system," *Black's Law Dictionary* 630 (6th ed. 1990), while *Webster's* defines it as the "money or other liquid resources of a government, business, group, or individual." *Webster's Ninth New Collegiate Dictionary* 463 (9th ed. 1989). In order to investigate the debtor's finances, the trustee must have access to documents that either verify or refute the numbers the debtor is required to provide to the Court in the bankruptcy filing, including disclosure of attorney compensation. While the Court agrees with the debtor that a by-product of turning over the letters to the trustee is determining debtor's counsel's compliance, it also allows the trustee to ensure that the debtor is not using funds to pay his attorney that would ordinarily come into the estate and be used to pay creditors. The Court finds that reviewing the letters falls within the purview of investigating the debtor's finances.

It is for these reasons that we find that the letters must be turned over the trustee for his or her review, not just in the instant case, but in all cases filed under 7, 11, 12, 13 or 15 of Title 11.

While the Court appreciates debtor's counsel's arguments, they are not well taken and are rejected by this Court. As for the debtor's § 526(c)(3) enforcement power argument, the Court finds that simply because the trustee is not an enumerated entity who may bring an action against anyone who might violate the new Code sections, that fact does not necessarily mean that he or she should not have access to the information for other purposes. The debtor's argument that only a State official has

13

enforcement authority also ignores § 526(c)(5), which states that the Court, among others including the UST, may bring an action against any violator.

The Court also rejects the debtor's notion that allowing the trustee access to the letters will create a "super-trustee" with limitless power, who will bully debtors and their attorneys. What the debtor and his counsel forget is that trustees in the bankruptcy system do not operate in a vacuum. The UST monitors the case trustees and the Court is always available to hear motions of any interested party, including the debtor, who feels that the trustee is overstepping his or her authority. Additionally, as noted above the Court is final arbiter of whether the fees charged to the debtor by counsel are fair and reasonable. Debtors can rest assured that the Court will not tolerate a trustee who uses his or her power to harass or abuse anyone.

Finally, the debtor's argument that the Chapter 13 trustees were able to carryout their duties without this information prior to the enactment of BAPCPA and, therefore, should be able to continue do so now is equally unpersuasive. These documents were not required by the Bankruptcy Code as part of the bankruptcy process prior to BAPCPA; once they became required documents under the Code they became available for inspection by the trustee. Again, if a person wants to obtain the benefits of bankruptcy, such as the automatic stay, reduced debt repayment and the permanent discharge of debt, they must make all of their financial information, including the initial disclosure letter and the engagement letter with their counsel, available for the scrutiny of those tasked with administering the system.

## CONCLUSION

For the foregoing reasons, the trustee's Objection to the Chapter 13 Plan is hereby **SUSTAINED** and the debtor is ordered to turn over the initial consultation letter and the engagement letter to the trustee.

**IT IS SO ORDERED.**
Norfolk, Virginia
October 24, 2006

                                              _____
                                              David H. Adams, Judge
                                              United States Bankruptcy Court

Copies to:
    Philip R. Boardman, Esq.
    Frank J. Santoro, Trustee
    Debera F. Conlon, Esq., AUST
    Cecelia Ann Weschler, Esq.